**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RUSSELL ABEL, | ) | CASE NO. 1:18-cv-02607 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Russell Abel (hereinafter "Plaintiff"), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (hereinafter "Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g), and this case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties. (R. 11). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. Procedural History

On November 15, 2013, Plaintiff filed an application for DIB, alleging a disability onset date of September 10, 2010. (R. 9, Transcript ("Tr.") 342-343). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 231-238). A hearing was held on April 5, 2016. (Tr. 95-155). On May 4, 2016, Plaintiff's application was denied. (Tr. 203-224). Plaintiff requested review of the

hearing decision, and on July 26, 2017, the matter was remanded for a new decision. (Tr. 225-229).

Plaintiff participated in a second hearing on January 4, 2018, was represented by counsel, and testified. (Tr. 48-94). A vocational expert ("VE") also participated and testified. *Id*. On May 31, 2018, the ALJ found Plaintiff not disabled. (Tr. 10-23). On September 21, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-5).

Plaintiff has filed a complaint challenging the Commissioner's final decision, (R. 1), and the parties have completed briefing in this case. (R. 14 & 16). Plaintiff asserts the following assignments of error: (1) the ALJ failed to grant appropriate weight to his treating psychiatrist, and (2) the residual functional capacity ("RFC") determination is not supported by substantial evidence. (R. 14).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On July 10, 2013, Plaintiff saw Nan Nelson, M.D. (Tr. 888, Exh. B6F/9). Although Plaintiff reported his depression was "about the same," Dr. Nelson indicated "it is interesting he now has the car fixed; he is looking for a house….[h]e is dealing with the realtors[,]" and also went to Mardi Gras with his nieces. *Id*. Plaintiff was reporting three panic attacks per day, but thought the Klonopin was helpful and his attacks were less intense and of shorter duration. *Id*. Dr. Nelson

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. Primarily, the court's recitation is focused on the course of treatment rendered by treating physician Barbara M. Rodriguez.

opined Plaintiff was doing "significantly better." *Id.*

On August 16, 2013, Plaintiff stated to Dr. Nelson that he was doing better, went to a fair with his nieces for three to four hours but was tired afterwards after "being hypervigilant with strangers." (Tr. 887, Exh. B6F/8). He was experiencing anxiety once or twice a day but "those are not true panic attacks so he is doing significantly better." *Id.* He was attending psychotherapy. *Id.*

On August 30, 2013, Barbara M. Rodriguez, M.D., Plaintiff's treating psychiatrist, wrote a letter indicating that Plaintiff had been diagnosed with posttraumatic stress disorder ("PTSD"), had been under her care from November 25, 2011, through March 30, 2012, and would qualify for a service dog. (Tr. 514, Exh. B1F/43).

On October 25, 2013, Dr. Nelson's mental status examination revealed Plaintiff had good eye contact, normal speech, and coherent, logical and goal directed thought without loose associations, flight of ideas, hallucinations or delusions. (Tr. 682-683, Exh. B3F/8-9). Plaintiff had good insight and no suicidal/homicidal ideations. *Id.* On November 5, 2013, Dr. Nelson noted Plaintiff's affect was "a little more normal" as it used to be blunted. (Tr. 681, Exh. B3F/7).

On December 18, 2013, Dr. Rodriguez observed that Plaintiff had been receiving medications from his family doctor—Dr. Stabler—and Dr. Nelson, a psychologist. (Tr. 771/Exh. B4F/81). He reported running out of psychotropic medications three weeks earlier; his affect was anxious, and his speech coherent. (Tr. 772). Plaintiff reported panic attacks six times per day, increased irritability, racing thoughts, nightmares, and night sweats. *Id.* Plaintiff stated that he thought his medications had been effective. *Id.* Dr. Rodriguez assessed symptoms of depression, panic attacks, insomnia, and PTSD. (Tr. 773)

On February 14, 2014, Plaintiff saw Dr. Rodriguez and appeared to be in good spirits. (Tr.

763, Exh. B4F/73). Dr. Rodriguez noted that Plaintiff reported difficulty sleeping, nightmares, and that he was isolating himself too much, but also that he was taking his dog for training once a week, participating in a veterans' charitable foundation, Ghost Rider, and volunteered to travel out of town for a memorial service to help others. *Id*. Dr. Rodriguez further noted that Plaintiff talks to his father occasionally, sees his girlfriend twice a week, and was "making his place a home." *Id*. Plaintiff reported being able to tolerate crowds when his service dog was with him. *Id*. Plaintiff's affect was bright, his speech coherent, and Dr. Rodriguez indicated Plaintiff had improved—pointing "out to him how active he has been." *Id*.

On April 16, 2014, Dr. Rodriguez found Plaintiff's affect was serious and appropriate, and his speech was coherent. (Tr. 893, Exh. B7F/2). Plaintiff reported isolating himself, trouble bonding with others, experiencing irritability, low energy, and decreased concentration and memory. (Tr. 893-894). Dr. Rodriguez noted Plaintiff's insight and judgment were good, and that he had no obvious cognitive dysfunction. (Tr. 894). His medications were adjusted. *Id*.

On May 14, 2014, Dr. Rodriguez noted Plaintiff was seeing counselors at two different locations; his affect was bright and his conversation lucid. (Tr. 1238-1239, Exh. B13F/100-101). He was working with a veterans' charitable foundation, volunteering and "doing outreach," and was nominated to be on the board. *Id*. Plaintiff reported feeling more energetic and less irritable on Buprorion and wanted to try a higher dose. *Id*. Dr. Rodriguez increased Bupropion, decreased Clonazepam, and left other medications unchanged. *Id*.

On June 13, 2014, Plaintiff reported to Dr. Rodriguez he lacked motivation, and does not go out every day. (Tr. 1129, Exh. B11F/100). He reported being active with the local foundation, providing support to others, he was comfortable on medications and was sleeping well. (Tr. 1129). Dr. Rodriguez observed Plaintiff's affect was euthymic and his conversation lucid. *Id*. Dr.

Rodriguez noted there is "[n]o pill for motivation" and continued Plaintiff's medications unchanged. *Id*. On August 1, 2014, Dr. Rodriguez observed Plaintiff had an anxious affect, coherent speech, and was pleasant and cooperative. (Tr. 1124). Plaintiff reported going out more, and taking his service dog to the park. *Id*. Plaintiff had not met with the local foundation members since June, but had been participating in church activities at least once a month. *Id*. He saw his nieces once a week, and was also visited with his father and a friend. *Id*. Dr. Rodriguez opined that Plaintiff was improving, but still struggled with free floating anxiety, which could be triggered by sounds, smells, or from listening to other veterans talk about their experiences. (Tr. 1125).

On September 26, 2014, Dr. Rodriguez observed that Plaintiff's affect was bright, his speech coherent, and that he was feeling more secure with his service dog. (Tr. 1055, Exh. B11F/26). Plaintiff reported the local veteran's foundation he was working with was being shut down due to founder's aging status. *Id*. Plaintiff reported he was looking forward to hunting; he was speaking with a friend daily and enjoying time with his family. *Id*. Dr. Rodriguez noted that Plaintiff was continuing to show improvement. *Id*.

On November 21, 2014, Dr. Rodriguez found Plaintiff's affect was appropriate, and his speech was coherent. (Tr. 1051, Exh. B11F/107). Plaintiff reported enjoying his service dog, he loved nature, hunting, and fishing. *Id*. He, however, reported "backing off" working with the foundation, racing thoughts daily sometimes leading to self-harm ideation with no plan. *Id*. Dr. Rodriguez concluded that Plaintiff was struggling with depressive thoughts, and needed more structure and goals. *Id*. On December 19, 2014, Dr. Rodriguez found Plaintiff's affect was bright and pleasant, and his speech was coherent. (Tr. 1048, Exh. B11F/19). Plaintiff reported that he was not as social as he had been in the past, but reported seeing family and taking his niece

Christmas shopping. *Id*. His mood was irritable at times, but usually mellow; traffic and crowds caused him to be more anxious. *Id*. Dr. Rodriguez assessed Plaintiff as stable and doing well on his current regimen. *Id*.

On February 18, 2015, Dr. Rodriguez observed Plaintiff had appropriate affect and coherent conversation, and had been living with his girlfriend and her stepson since January 8, 2015. (Tr. 1045). They all go to church together. *Id*. Dr. Rodriguez reported that, although Plaintiff was struggling, he was making progress. *Id*. On April 1, 2015, Dr. Rodriguez observed that Plaintiff's affect was anxious, and his conversation was coherent. (Tr. 1040, Exh. B11F/11). Plaintiff reported staying in bed for five days and withdrawing from his girlfriend. *Id*. Plaintiff held Bible study at his house weekly, and reported doing less volunteer work. (Tr. 1041).

On April 15, 2015, Plaintiff told Dr. Rodriguez his "skin felt hypersensitive like pins and needles." (Tr. 1028, Exh. B10F/99). He reported trouble sleeping and concentrating, and distancing himself from his family. *Id*. His affect was depressed, his conversation was coherent though he had trouble articulating his feelings. *Id*. Plaintiff thought he was supposed to be off Clonazepam and stopped taking it; Dr. Rodriguez speculated that his worsened mood/anxiety might be explained by this; and his medications were adjusted. (Tr. 1029).

On April 29, 2015, Dr. Rodriguez noted that Plaintiff's affect was brighter, he was able to smile, and appeared much more relaxed. (Tr. 1025, Exh. B10F/96). Plaintiff reported he was irritable, but under more control. *Id*. His sleep improved. *Id*. Further, Dr. Rodriguez observed that Plaintiff had improved with the addition of Clonazepam, but still had underlying depression. (Tr. 1026). The doctor added Venlafaxine to a low dose of Bupropion. *Id*.

On June 5, 2015, Plaintiff told Dr. Rodriguez his medication, Venlafaxine, was helping and that he was more ambitious and productive. (Tr. 1022, Exh. B10F/93). However, he had been off

of his medication for three weeks. *Id.* He reported an instance of losing his temper, but not cursing, when his niece left the zoo without notifying anyone. *Id.* Plaintiff appeared at the visit with his service dog, Ace, and had appropriate affect and coherent stream of conversation. *Id.* He remained active at his church. *Id.* Dr. Rodriguez restarted Plaintiff on Venlafaxine, noted Plaintiff was making good decisions, and that his anger was appropriate and isolated. *Id.*

On October 19, 2015, Dr. Rodriguez noted Plaintiff's affect was bright, his conversation coherent, and he was calmer/less irritable. (Tr. 1074, Exh. B11F/45). Plaintiff stated his relationships are fine, he was active at church, and he was socializing more. *Id.*

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On January 17, 2014, State Agency psychologist Mel Zwissler, Ph.D., completed a mental RFC assessment and opined that Plaintiff had no limitations with respect to understanding and memory. (Tr. 182). In the domain of concentration and persistence, Dr. Zwissler indicated Plaintiff was "not significantly limited" in seven out of eight areas, but was "moderately limited" in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 183). Dr. Zwissler noted that Plaintiff is "able to perform simple and some moderately complex tasks. He is training a PTSD dog in regular classes." *Id.* In the domain of social interaction, Dr. Zwissler assessed moderate limitations in Plaintiff's ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* Dr. Zwissler opined that Plaintiff "can interact in a limited superficial capacity around others," explaining that Plaintiff "[g]oes shopping, attends the Fair, but is hypervigilant with strangers in public." *Id.* In the domain of adaptation, Dr. Zwissler

assessed moderate limitations in Plaintiff's ability to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. *Id.* Dr. Zwissler explained that "[d]aily minor anxiety attacks do not prohibit adaptation to minor expected changes. He is learning adaptation techniques with the help of a therapist, and gets some help setting daily goals to be more active and effective." (Tr. 184) Dr. Zwissler's conclusion assessed a mental RFC that limited Plaintiff to "low stress work with no high production quotas, no work involving arbitration, confrontation, negotiation or supervision and limited to superficial interpersonal interactions with the public and co-workers." *Id.*

On May 5, 2014, State Agency psychologist Carl Tischler, Ph. D., reviewed the evidence of record and offered a mental RFC assessment that echoed Dr. Zwissler's above findings. (Tr. 197-198).

On July 25, 2015, Dr. Rodriguez completed a checklist-style medical source statement concerning Plaintiff's mental capacity. (Tr. 1137). The doctor checked boxes indicating that Plaintiff could rarely maintain regular attendance and be punctual within customary tolerances; deal with work stress; and, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 1137). In addition, Dr. Rodriguez checked boxes indicating Plaintiff could only occasionally perform the following: follow work rules; maintain attention and concentration for extended periods of two hour segments; respond appropriately to changes in routine settings; deal with the public; relate to co-workers; interact with supervisors; function independently without redirection; work in coordination with or proximity to others without being distracted; understand, remember and carry out complex job instructions; and relate predictably in social situations. (Tr. 1137-1138). The doctor also stated that Plaintiff had

no limits in his ability to leave his home on his own; he could frequently use judgment;

frequently understand, remember, and carry out both detailed and simple job instructions; and

frequently work in coordination with or proximity to others without being distracting. (Tr. 1137-

1138). Dr. Rodriguez indicated Plaintiff had been diagnosed with PTSD and was "irritable, [had

a] tendency to withdraw, decreased tolerance for people [and his] compliance with appointments

is erratic." (Tr. 1138). No other explanation was given for the checked restrictions. (Tr. 1137-

1138).

**B. Relevant Hearing Testimony**

During the administrative hearing, the ALJ posed the following hypothetical question to the

VE:

> [The hypothetical] individual retains the residual functional capacity to perform
> light work as defined under the regulations except he can stand and/or walk for
> four hours in an eight-hour workday. He can never climb ladders, ropes, or
> scaffolds; kneel and crawl. This hypothetical individual can occasionally climb
> ramps or stairs, stoop and crouch. He can frequently balance, and he should avoid
> concentrated exposure to noise. This individual is further limited to low-stress
> work with no high production quotas or piece-rate work. He is precluded from
> work involving arbitration, confrontation, negotiation, or supervision. And he is
> limited to superficial interaction, interpersonal interactions with the public and
> coworkers.

(Tr. 86-87).

The VE testified that such an individual could not perform any of Plaintiff's past relevant

work (Tr. 87), but could perform the following jobs: garment sorter, Dictionary of Occupational

Titles ("DOT") 222.687-014 (251,000 jobs nationally); marker, DOT 209.587-034 (2,000,000

jobs nationally); and, checker, DOT 221.587-010 (74,000 jobs nationally). (Tr. 88). The VE

testified that an additional requirement that the individual be permitted to alternate between

sitting and standing every thirty minutes would not eliminate the above identified jobs. (Tr. 89-

90).

The ALJ posed another hypothetical that reduced the exertional level to sedentary and kept all the other limitations in place. (Tr. 90). The VE identified the following jobs that such an individual could perform: mounter, hand, DOT 976.684-018 (14,000 jobs nationally); ink, printer, DOT 652.685-038 (170,000 jobs nationally); and, plastic design applier, DOT 690.686-046 (88,000 jobs nationally). (Tr. 90-91).

The VE indicated his testimony was consistent with the DOT, save for the testimony regarding alternating positions, which is not covered by the DOT. (Tr. 91).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental

ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2015.

2. The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of June 12, 2013 through his date last insured of June 30, 2015 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: bilateral plantar fascial fibromatosis, metatarsalgia, bilateral sensorineural hearing loss, depressive disorder, and posttraumatic stress disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except he could stand and/or walk for four hours in an eight-hour day; he could

never climb ladders, ropes or scaffolds, kneel and crawl; he could occasionally climb ramps or stairs, stoop and crouch; he could frequently balance; and he should have avoided concentrated exposure to noise. Claimant was further limited to low stress work with no high production quotas or piece rate work; he was precluded from work involving arbitration, confrontation, negotiation or supervision; and he was limited to superficial interpersonal interactions with the public and coworkers.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on *** and was 43 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. § 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 12, 2013, the amended alleged onset date, through June 30, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 10-22).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a

whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Treating Physician Rule**

In the first assignment of error, Plaintiff argues the ALJ should have ascribed greater weight to the opinions of his treating psychiatrist, Dr. Rodriguez. (R. 14, PageID# 2046).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 544 (6ᵗʰ Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6ᵗʰ Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established, however, that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6ᵗʰ Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7ᵗʰ Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6ᵗʰ Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is

"unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence."

*Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

 After setting forth the content of Dr. Rodriguez's July 2015 opinion, the ALJ addressed the opinion in a lengthy discussion as follows:

> The undersigned gives this opinion limited weight. Dr. Rodriguez's opinion that the claimant could rarely maintain regular attendance and be punctual within customary tolerance, deal with work stress, and complete a normal workday and workweek without interruption from psychologically based symptoms is not consistent with overall examination findings and the claimant's activities. He was able to take his service dog for training once per week, participate in the Ghost Rider Foundation helping other veterans, attend a memorial in Lima, Ohio, talk to his father occasionally, and see his girlfriend twice per week. (Ex. B4F/73). The claimant was later nominated to the Ghost Rider Foundation board. (Ex. B13F/101). He was able to go to Mardi Gras with his nieces and could go Christmas shopping. (Ex. B6F/9; Ex. B13F/19). He was able to buy a house. (Ex. B6F/6, 8). He attended and was active in church, and had Bible study every week at his house. (Ex. B11F/11, 16, 45). He was often alert and oriented with normal cognitive functioning, goal directed thought processes, and good insight and judgment. (Ex. B2F/8, 10; Ex. B3F/8, 9; Ex. B4F/73, 82, 86; Ex. B10F/93, 99; Ex. B11F/19, 26). Likewise, her assessment that the claimant could only occasionally follow work rules, maintain attention and concentration for extended periods of two hour segments, respond appropriately to changes in routine settings, and understand, remember and carry out complex job instructions finds little support in the record as a whole that the claimant was often alert and oriented with normal cognitive functioning, goal directed though[t] processes, and good insight and judgment. (Ex. B2F/8, 10; Ex. B3F/8, 9; Ex. B4F/73, 82, 86; Ex. B10F/93, 99; Ex. B11F/19, 26). While the claimant has concentration, persistence or pace, limitations, they are reflected in the limitations of no high production quotas or piece rate work, and no work involving arbitration, confrontation, negotiation or supervision. (Ex. B4F/86). Her opinion that the claimant can only occasionally respond appropriately to changes in routine settings, deal with the public, relate to coworkers, and interact with supervisors, and work in coordination with or proximity to others without being distracted is

supported by the claimant's history of post-traumatic stress disorder and related symptoms, for which he requires a support dog at times. For the same reason, though, her assessment that the claimant can frequently work in coordination with or proximity to others without being distracting, socialize, and relate predictably in social situations is overly generous, as any contact with other[s] should be superficial at most. (Ex. B1F/47-51; Hearing).

(Tr. 20-21).

The ALJ provides one major reason for discounting the weight accorded to Dr. Rodriguez's opinion—its inconsistency with the physician's overall examination findings and the claimant's activities. Moreover, the ALJ supports the finding with several examples along with citations to the record. Thus, the ALJ's observation that the record is inconsistent with Dr. Rodriguez's opinion is not of the conclusory sort that would require a remand.[2] Rather, if the ALJ's description is accurate, the identified inconsistencies certainly could provide a good reason for rejecting a treating source opinion. *See, e.g., Landuyt v. Berry Hill*, 2018 U.S. Dist. LEXIS 51239, *15 (N.D. Iowa Mar. 28, 2018) ("Inconsistencies with the treatment notes provide a good reason to not give the treating physician's opinion controlling weight."); s*ee also Jung v. Comm'r of Soc. Sec.*, No. 1:11-CV-34, 2012 WL 346663, at *14 (S.D. Ohio Feb. 2, 2012) (finding the ALJ gave "good reasons" for discounting a treating physician's opinions "by citing their internal and external inconsistencies and contradictions"), *report and recommendation adopted*, 2012 WL 628459 (S.D. Ohio Feb. 27, 2012). Defendant asserts the ALJ sufficiently

---

[2] *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source's opinion where the ALJ merely concluded, without explanation, that the evidence of record did not support the severity of the assessed limitations); *Patterson v. Astrue*, 2010 U.S. Dist. LEXIS 54062, 2010 WL 2232309 at *14 (N.D. Ohio June 2, 2010) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance.") (Vecchiarelli, M.J.).

identified evidence of record, including Dr. Rodriguez's own treatment notes, that make it clear

to a reviewing court why the ALJ ascribed little weight to that opinion. (R. 16, PageID# 2067,

citing *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011)).

The court agrees. As noted in the discussion of Plaintiff's medical treatment *supra*, Dr.

Rodriguez noted Plaintiff's insight and judgment were good, he had no obvious cognitive

dysfunction, his affect was more often than not "bright" or "appropriate," and she consistently

noted his social participation with organizations such as the charitable foundation Ghost Riders,

his frequent participation at church activities, and social interaction with his girlfriend, friends,

family members, and others. In sum, the ALJ's observation that the treatment records of Dr.

Rodriguez are inconsistent with her opinion as to Plaintiff's functional limitations is reasonably

supported.

Plaintiff's further argument—that the medical evidence is actually consistent with the

limitations assessed by Dr. Rodriguez—is tantamount to an invitation for this court to reweigh

the medical evidence of record and to specifically assign greater weight to Dr. Rodriguez's

opinion, rather than an argument that the ALJ failed to provide good reasons for rejecting the

opinion. Moreover, Plaintiff asserts that "the medical records are perfectly consistent with the

social limitations assigned by Dr. Rodriguez," but such a contention is not entitled to any weight,

as it invites the court to exceed the standard of review and weigh the evidence consistent with

Plaintiff's interpretation of the record. This court's role in considering a social security appeal,

however, does not include reviewing the evidence *de novo*, making credibility determinations, or

reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No.

16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality

require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."),

*report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

Because the ALJ gave good reasons for giving limited weight to the opinion of Dr. Rodriguez, and because the record reasonably supports the ALJ's findings, Plaintiff's contention that the ALJ improperly assessed her opinion is not well taken.

**2. RFC Finding**[3]

In the second assignment of error, Plaintiff argues the RFC determination is not supported by substantial evidence, because it should have included greater limitations in the area of interacting with others beyond the superficial limitation found by the ALJ. (R. 14, PageID# 2050). A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[4] The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

At the fifth and final step of the disability analysis, if a claimant cannot perform his past relevant work, the ALJ must determine whether the claimant can adjust to other work in light of the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *accord*

---

[3] The Commissioner's brief does not meaningfully address Plaintiff's second assignment of error.

[4] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, *the claimant's RFC*, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

*White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding that a claimant can perform a significant number of jobs must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*, 820 F.2d 777, 779 (6th Cir. 1987)). Testimony from a vocational expert—in response to a hypothetical question—may constitute such substantial evidence, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)).

Plaintiff points primarily to his own statements made to medical providers and to his hearing testimony to argue that greater limitations concerning his ability to interact with others were warranted. (R. 14, PageID# 2051-2052). However, an ALJ need only incorporate those limitations he or she accepted as credible into the hypothetical question. *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Moreover, Plaintiff's line of argument is tantamount to asking this court to engage in its own evaluation of Plaintiff's credibility.[5] The court declines to do so, and it rejects such argument. The ALJ expressly found

_____

[5] The court is aware that Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017) eliminated the word "credibility," a change which the Sixth Circuit has characterized

that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 16). To the extent Plaintiff would take issue with the ALJ's credibility determination, he has not presented the court with an actual legal argument challenging it, and, therefore, has waived such argument. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 WL 2868735, at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors).

To the extent Plaintiff is relying on the opinions of Dr. Rodriguez, the court has already determined that the ALJ gave good reasons for ascribing such opinion limited weight, and an RFC need not incorporate opinions that have been rejected. Plaintiff also cites an opinion from clinical psychologist Kevin McCutcheon that Plaintiff was markedly impaired in his ability to respond appropriately to coworkers, supervisors, or the general public. (R. 14, PageID# 2051, *citing* Tr. 524). In the decision, the ALJ expressly addressed Dr. McCutcheon's opinion and

---

as "merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). The court declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

assigned it only "partial weight as it is only partially supported by the record as a whole."[6] (Tr. 19). Plaintiff has not crafted any argument suggesting the ALJ erred in his treatment of Dr. McCutcheon's opinion. Again, the ALJ was not required to incorporate an opinion into the RFC that was expressly rejected.

For the reasons above, Plaintiff's second assignment of error is not well taken.

## VI. Conclusion

The Commissioner's final decision is AFFIRMED, for the foregoing reasons.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: March 20, 2020

---

[6] The ALJ went on to explain why he believed the record was inconsistent with the opinion with citations to the record. (Tr. 19).